UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| JAMES B. BLALOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:17-cv-00170-RLY-MPB |
| | ) | |
| FIFTH THIRD BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT and PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Plaintiff, James B. Blalock, an employee of Defendant, Fifth Third Bank, filed the present Complaint alleging he was denied incentive compensation under the Indiana Wage Payment Statute and was retaliated against for voicing concerns that Fifth Third was violating the Employee Retirement Income Security Act ("ERISA") by claiming improper tax deductions. Fifth Third now moves to dismiss Plaintiff's First Amended Complaint, and Plaintiff moves for leave to file a Second Amended Complaint. Because the proposed Second Amended Complaint adds only a claim for Sarbanes-Oxley Act whistleblower retaliation, and allegations and remedies relating to that claim, the court finds the Motion to Dismiss is still ripe for adjudication. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) (stating that "[a]n amended pleading ordinarily supersedes the prior pleading," and that "[t]he prior pleading is in effect withdrawn as to all matters not restated in the amended pleading").

1

The court, having read and reviewed the parties' written submissions and the applicable law, now **GRANTS in part and DENIES in part** Defendant's Motion to Dismiss and **GRANTS** Plaintiff's Motion for Leave to File Second Amended Complaint.

## I. Background

Plaintiff is Vice President and Managing Client Consultant at Fifth Third Bank. (Filing No. 16, First Am. Compl. ¶ 7). He maintains, and is a participant in, an Employee Stock Option Plan ("ESOP"), both of which are governed by ERISA. (*Id.* ¶¶ 8, 33). In 2009, Plaintiff discovered that Fifth Third was claiming tax deductions for all dividend payments to ESOP participants who were less than 100% vested in their account balances. (*Id.* ¶ 9). Plaintiff immediately reported the problem to the Plan Administrator and Sponsor, and inside and outside legal counsel. (*Id.* ¶ 15). He reported the problem again in October 2014 by calling the Fifth Third Ethics Line after discovering the problem had not been fixed. (*Id.* ¶ 21).

Plaintiff is also covered by Fifth Third's 2011 Incentive Compensation Plan. (*See* Filing No. 24-1, 2011 Incentive Compensation Plan at 1). His incentive compensation was based on growth in book of business, new sales, referrals, and other qualitative factors like "performance effectiveness." (*See id.*; First Am. Compl. ¶¶ 22, 46).

In December 2014, Fifth Third informed Plaintiff that it was revoking his 2011 Incentive Compensation Plan. (*Id.* ¶ 23). For whatever reason, Fifth Third continued to pay Plaintiff his incentive compensation for 2014 and 2015. (*Id.* ¶ 24). But it denied Plaintiff's incentive compensation for 2016, which was due for payment in April 2017. (*Id.* ¶ 28).

On October 28, 2015, Plaintiff participated in a telephone conference with Howard Hammond, Senior Vice President of Fifth Third Securities, and his immediate supervisor, Christine Pigorsh. (*Id.* ¶ 26). During the call, he alleges Hammond and others criticized and attacked him. (*Id.*). Plaintiff also alleges that in a separate call, Pirgorsh told Plaintiff that Hammond wanted to "poke [Plaintiff] in the eye" because of the time Plaintiff had "bested" him, including Plaintiff's reporting of the ESOP tax issue. (*Id.*). Plaintiff made an internal complaint of retaliation against Hammond on March 24, 2016. (*Id.* ¶ 27).

Plaintiff applied for the position of Managing Director of Retirement Corporation of America on August 1, 2017. (*Id.* ¶ 19). On November 14, 2017, three weeks after Plaintiff filed his original Complaint, Fifth Third announced that it had selected another candidate for the position. (*Id.*).

Plaintiff filed the present action on October 25, 2017, and moved for leave to file a Second Amended Complaint on March 27, 2018.

## II. Motion to Dismiss

### A. Legal Standard

"A pleader's responsibility is to state a claim for relief that is plausible on its face." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 832-33 (7th Cir. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). When reviewing a motion to dismiss, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences from those facts in favor of the plaintiff. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).

3

B.  **Merits**

There are two claims at issue: (1) a claim for unpaid incentive compensation under the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1, and (2) a claim for unlawful retaliation under ERISA § 510, 29 U.S.C. § 1140.

1.  **Wage Claim**

In Count II, Plaintiff alleges Fifth Third failed violated the Indiana Wage Payment Statute by failing to pay him incentive compensation for his work in 2016. Fifth Third argues Plaintiff's wage claim should be dismissed for three reasons: (1) the claim is time-barred; (2) Plaintiff's incentive compensation is not a "wage" under the Wage Payment Statute; and (3) Plaintiff fails to allege he is owed any unpaid compensation pursuant to an agreement with Fifth Third. The court will begin with the second argument.

Under Indiana's Wage Payment Statute, wages are defined as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." Ind. Code § 22-2-9-1(b). Employers must pay their employees' wages within ten days of the date they are earned. Ind. Code § 22-2-5-1(b).

In determining whether a method of payment is a "wage" under the Wage Payment Statute, the label given to the payment is not controlling; rather, the court looks to the substance of the compensation to determine whether it is a wage. *Quezare v. Byrider Fin., Inc.*, 941 N.E.2d 510, 514 (Ind. Ct. App. 2011); *see also Thomas v. H&R Block E. Enters., Inc.*, 630 F.3d 659, 664 (7th Cir. 2011) (interpreting Indiana law). A payment is more likely to be a "wage" if it (1) is not linked to a contingency outside the

4

employee's control, (2) directly relates to the employee's productivity, (3) is paid on a regular, periodic basis for regular work done by the employee, and (4) is not paid in addition to other wages. *Id.* at 664-65 (citations omitted). A plaintiff need not satisfy all four factors in order for compensation to be considered a "wage" in Indiana. *Prime Mortg. USA, Inc. v. Nichols*, 885 N.E.2d 628, 664-65 (Ind. Ct. App. 2008). On the other hand, bonus payments that depend upon contingencies outside of the plaintiff's control and are difficult to calculate and pay within ten days after being earned, such as annual or biannual bonuses, are not "wages" under the Indiana Wage Claim and Payment Statutes. *Herremans v. Carrerra Designs, Inc.*, 157 F.3d 1118, 1121-22 (7th Cir. 1998) (applying Indiana law); *Highhouse v. Midwest Orthopedic Inst., P.C.*, 807 N.E.2d 737, 740 (Ind. 2004).

Accepting the allegations of Plaintiff's First Amended Complaint at true, Plaintiff has failed to state a claim under the Wage Payment Statute. Plaintiff's 2011 Incentive Compensation Plan is designed to "reward those individuals who not only exceed financial performance goals, but do so while increasing [Fifth Third's] market share and strengthening [Fifth Third's] existing relationships." (Filing No. 24-1 at 1). For example, in the section entitled "Growth in Book of Business," Plaintiff and other Client Consultants were rewarded for "participation in new sales acquisition and implementation" that generates profit for Fifth Third. (*Id.* at 2). The goal for the "growth in book" component was partially established at Plaintiff's "manager's discretion." (*See id.* (stating growth is measured, in part, based on the "difference between actual results (market, cross-sell and new sales) and the performance goal (established in accordance to

5

the overall IS Revenue Plan and your Regional Manager's discretion) for your portfolio (book) of assigned clients"). Under the plan's calculation for the "New Sales Commission" component, Plaintiff was eligible for credit on qualifying new sales measured by the amount of revenue received by Fifth Third. (*Id.* at 4 (stating a qualified new sale "must result in at least $5,000 of revenue from a new customer")). At least some of these sales involved other team members. (*Id.* at 3 (stating revenue credit for IS product sales depends on "(a) the role played in the sale, (b) the source of the business, and (c) the number of participants in the sale.")). Thus, incentive payments were not entirely based on Plaintiff's time worked or his individual efforts.

Second, Plaintiff's incentive compensation was not paid on a regular, periodic basis. The plan contemplates that "book of business" and "performance effectiveness" payouts would be paid on an annual basis, "during the third pay cycle after the year-end or as soon as practical thereafter," while sales commissions would be paid "during the third pay cycle after the quarter, or as soon as practical thereafter." (*Id.* at 2, 4, 6). "[W]hen a particular form of compensation is paid annually, it is less likely to be considered a wage." *Thomas*, 630 F.3d at 665. Such payouts "lend support to the view that both parties recognize that frequent calculation and payment was difficult, if not impossible." *Highhouse*, 807 N.E.2d at 740.

Lastly, Plaintiff's incentive compensation is paid in addition to his base salary. (*Id.* at 1 ("Client Consultant compensation is comprised of a base salary plus incentive compensation.")). This is yet another wage-defining factor weighing against Plaintiff.

6

Although Plaintiff alleges that his bonus was tied to "a certain percentage of annual sales and referral revenue," he also alleges, and his plan confirms, that the bonus is paid on an annual basis. (First Am. Compl. ¶ 22). In addition, the plan provides that his bonus is based, at least in part, on the financial success of Fifth Third and its sales team. Accordingly, the court must find Plaintiff's incentive compensation is not a "wage"; therefore, Count II must be dismissed. Having so found, the court need not address Fifth Third's other arguments in support of dismissal.

### 2. ERISA § 510 Retaliation

In Count I, Plaintiff alleges Fifth Third retaliated against him for the October 2014 internal complaint by failing to promote him and by failing to pay him incentive compensation for 2016.

Section 510 of ERISA makes it unlawful "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [or ERISA] ... [or] because he has given information or has testified or is about to testify in an inquiry or proceeding relating to [ERISA]." 29 U.S.C. § 1140. To establish a case of retaliation under § 510 of ERISA, a claimant must demonstrate a causal connection between participation in a statutorily protected activity and any of the illegal conduct described in § 510. Fifth Third argues Plaintiff's ERISA § 510 retaliation claim should be dismissed because: (1) it is time-barred; (2) Plaintiff fails to plead a plausible ERISA § 510 violation; and (3) Plaintiff fails to plead appropriate equitable relief.

### a. Retaliation for the October 2014 Internal Complaint

#### i. Statute of Limitations

The applicable statute of limitations for ERISA § 510 claims is the statute of limitations applicable to retaliatory discharge claims under Indiana law, which is two years. *Ahnert v. Delco Elecs. Corp.*, 982 F.Supp. 1320, 1328 (S.D. Ind. 1997). The statute begins to run on the date the employer communicates the adverse action to the employee. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1141 (7th Cir. 1992). Consequently, Fifth Third argues the statute began to run in December 2014 when Fifth Third informed Plaintiff it was revoking his incentive compensation.

The First Amended Complaint alleges that Fifth Third paid him incentive compensation in 2014 and 2015 despite informing him in December 2014 the plan had been revoked. Given the inconsistency between Fifth Third's words and actions, at this stage of the litigation, the court finds the cause of action accrued when he was denied payment in April 2017. Therefore, his claim is timely.

#### ii. Protected Activity

The protected activity at issue is Plaintiff's October 2014 internal complaint regarding whether Fifth Third improperly took tax deductions for non-vested ESOP dividends. Relying on *George v. Junior Achievement of Cent. Ind., Inc.*, 694 F.3d 812 (7th Cir. 2012), Fifth Third argues Plaintiff's internal complaint regarding tax deductions for ESOP dividends could not plausibly amount to a violation of ERISA. *Id.* at 817 (stating that protected activity under § 510 requires that the complaint "be a plausible one, though not necessarily one on which the employee is correct."). Plaintiff invokes

8

Title VII's standard for protected activity, and alleges that he reasonably and in good faith believed that Fifth Third's action violated ERISA law. (First. Am. Compl. ¶ 14); *see also Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 891-92 (7th Cir. 2001) (assuming without deciding that Title VII's standard for protected activity applied to plaintiff's § 510 ERISA claim).

At this juncture, the court finds Plaintiff has sufficiently alleged that he engaged in protected activity under the plausibility standard of *George* and the reasonable/good faith standard of Title VII. Plaintiff alleges that the ESOP was part of Fifth Third's 401(k) plan, and is governed by ERISA. (First Am. Compl. ¶ 8). Prior to October 2014, one of his job responsibilities was the employee 401(k) plan. (*Id.* ¶ 20). Although his belief that Fifth Third's tax deductions from the ESOP violated ERISA was incorrect, the allegations of his First Amended Complaint suggest his belief was plausible and reasonable. At the very least, the court cannot say his belief was groundless. *See Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002) (stating "[i]t is improper to retaliate against anyone for claiming a violation of Title VII unless that claim is 'completely groundless,'" meaning "one resting on facts that no reasonable person possibly could have construed as a case of discrimination").

### iii. Appropriate Equitable Relief

Plaintiff's prayer for relief includes the following:

Any and all appropriate equitable relief to make [Plaintiff] whole to redress Fifth Third's violations of ERISA, 29 U.S.C. § 1140, including monetary damages, if necessary to place [him] in the position he would have been in if Fifth Third had not retaliated against him in violation of ERISA.

ERISA § 510 explicitly states that the statute is enforceable through ERISA § 502(a)(3)'s remedy of "appropriate equitable relief." Consequently, as Fifth Third correctly observes, Plaintiff is not entitled monetary damages under ERISA § 510. *Health Cost Controls v. Skinner*, 44 F.3d 535, 536-37 (7th Cir. 1995). Plaintiff responds that appropriate equitable relief could include retroactive reinstatement of his rights under the 2011 Incentive Compensation Plan and/or providing him with promotion opportunities for which he had been wrongly denied. Reinstatement of his rights under the incentive compensation plan is tantamount to monetary damages and is therefore, impermissible. But his claim for promotion opportunities is not. Therefore, his ERISA retaliation claim based on his October 2014 internal complaint set forth in Count I survives.

### b. Retaliation for Filing this Lawsuit

Alternatively, Plaintiff argues he applied for the position of Managing Director of Retirement Corporation of America, and was denied the position just three weeks after he filed this lawsuit. This, he argues, constitutes another claim for ERISA § 510 retaliation.

As Fifth Third argues, Plaintiff's allegations fail to raise a reasonable inference that he was denied the position because he engaged in the protected activity of filing a lawsuit. Instead, he alleges:

> 18. Since reporting the flaw in plan design to the appropriate persons, [Plaintiff] has applied for, but not been selected for a number of internal promotions at Fifth Third.
>
> 19. For example, [Plaintiff] applied for the position of Managing Director of Retirement Corporation of America on August 1, 2017. Fifth Third announced that it had selected another candidate for this position on November 14, 2017, after [Plaintiff] filed this lawsuit on October 25, 2017.

(First Am. Compl. ¶¶ 18-19). The "flaw in plan design" refers to his October 2014 internal complaint regarding Fifth Third's alleged improper tax deductions, not his October 2017 Complaint. (*See id.* ¶ 15 (alleging he "immediately reported the problem to the Plan Administrator and Sponsor")). Therefore, Plaintiff's retaliation claim premised on his filing the present lawsuit cannot survive.

### III. Motion for Leave to Amend

To bring a Sarbanes-Oxley Act ("SOX") whistleblower retaliation claim in federal court, a plaintiff must first file an administrative complaint with the Secretary of Labor. 18 U.S.C. § 1514A(b)(1). "[I]f the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant," a plaintiff may file a claim in federal court. 18 U.S.C. § 1514A(b)(1)(B). Because more than 180 days have past since Plaintiff filed the administrative complaint, and there is no showing of bad faith on the part of Plaintiff, he moves for leave to file a Second Amended Complaint to add a SOX whistleblower retaliation claim. According to the proposed Second Amended Complaint, this claim, like the others, arises out of the December 2014 revocation of Plaintiff's incentive compensation.

To assert a timely retaliation claim under the SOX Act, Plaintiff must have filed the claim "not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation." 18 U.S.C. § 1514A(b)(2). Fifth Third opposes the motion because, it argues, the claim accrued in December 2014; therefore, it is barred under the applicable statute of limitations and would be futile.

Plaintiff argues his claim is timely because it was filed with the Secretary on August 29, 2017, within six months of the day he was denied his incentive compensation payment (April 2017).

The court finds, at this stage of the litigation, that Plaintiff's SOX whistleblower retaliation claim is timely because, as noted above, Fifth Third acted inconsistently by paying him incentive compensation in 2014 and 2015, notwithstanding its prior revocation of the same. Therefore, the statute of limitations began to run when it failed to pay him his incentive compensation in April 2017. Because the filing of this claim is not futile, the court finds Plaintiff's Motion for Leave to File Second Amended Complaint should be **GRANTED**.

**IV.    Conclusion**

Accordingly, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Filing No. 23) is **GRANTED in part** and **DENIED in part**. Specifically, Defendant's Motion is **GRANTED** on Plaintiff's claim brought under Indiana's Wage Payment Statute. Defendant's Motion is **DENIED** on Plaintiff's ERISA § 510 retaliation claim based on October 2014 internal complaint, but **GRANTED** on Plaintiff's ERISA § 510 retaliation claim based on the filing of the present action. In addition, Plaintiff's Motion for Leave to File Second Amended Complaint (Filing No. 38) is **GRANTED**. Plaintiff is

**ORDERED** to file the Second Amended Complaint within five (5) days of the date of this Entry.

**SO ORDERED** this 17th day of May 2018.

                                      RICHARD L. YOUNG, JUDGE
                                      United States District Court
                                      Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.